IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SEAN SHARER, #48728-177,<br>　　　　MOVANT,<br><br>V.<br><br>UNITED STATES OF AMERICA,<br>　　　　RESPONDENT. | §<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br>CASE NO. 3:17-CV-2579-B-BK<br>(CRIMINAL 3:14-CR-367-B-18) |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, the motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 was referred to the undersigned United States magistrate judge for case management, including the issuance of findings and a recommended disposition. As detailed herein, the motion should be **DENIED**.

**I. BACKGROUND**

Movant Sean Sharer pled guilty to possessing a controlled substance with the intent to distribute and was sentenced to 175 months' imprisonment and a three-year term of supervised release. Crim. Doc. 2461. His direct appeal was dismissed as frivolous. *United States v. Sharer*, 685 F. App'x 365 (5th Cir. 2017). Sharer later filed the instant *pro se* Section 2255 motion, asserting ineffective assistance of counsel and challenging the voluntariness of his guilty plea. Doc. 2; Doc. 3. Subsequently, with leave of Court, the record was expanded to include his and his mother's sworn declarations and correspondence with defense counsel. Doc. 4; Doc. 6.

The Government filed a response in opposition, arguing that Sharer's alleged grounds for relief lack merit. Doc. 8. Sharer filed a reply requesting an evidentiary hearing. Doc. 10.

Upon review, the Court finds that Sharer has failed to demonstrate that counsel was ineffective or that his guilty plea was invalid. Thus, his Section 2255 motion fails on the merits.

## II. ANALYSIS

To establish ineffective assistance of counsel, a movant must demonstrate counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id*. at 697.

To prove the deficient performance prong of the *Strickland* test, the movant must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. at 687. The proper measure of attorney performance is reasonableness under prevailing professional norms. *Id*. at 688. That said, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

Moreover, to demonstrate prejudice in the context of a guilty plea, the movant must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The movant bears the burden of demonstrating that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

In addition, to be constitutionally valid, a guilty plea must be knowingly, voluntarily, and intelligently made. *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). In determining the voluntariness of a plea, the court considers all relevant circumstances, including whether the defendant: (1) had notice of the charges against him; (2) understood the constitutional protections he was waiving; and (3) had access to competent counsel. *United*

*States v. Shepherd*, 880 F.3d 734, 740-41 (5th Cir. 2018); *see also Boykin v. Alabama,* 395 U.S. 238, 244 (1969) (to be knowing and intelligent, the defendant must have "a full understanding of what the plea connotes and of its consequence").

When challenging the validity of his guilty plea, a defendant ordinarily may not refute his sworn testimony given at a plea hearing while under oath. *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998). A defendant must also overcome the presumption of regularity and "great evidentiary weight" accorded court records. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether plea is entered voluntarily and knowingly).

### A. Sharer's Allegations

Sharer argues that:

- Ken Carroll, his defense counsel, misled him about pleading guilty when he misinformed him about "the likely sentencing consequences of the plea."

- Defense counsel also failed to promptly file a motion to withdraw his plea and misadvised Sharer that he could not withdraw it.

- Because of counsel's deficient conduct, his guilty plea was not knowing and voluntary.

Doc. 2 at 4-5; Doc. 3 at 2, 7-8, 12-13.

Specifically, Sharer asserts that counsel erroneously advised that the Government's "formal plea offer" limited Sharer's guideline drug quantity to the six grams of methamphetamine stipulated in the Factual Resume and resulted in a guideline imprisonment range of 37 to 46 months. Doc. 3 at 2. He further avers that counsel failed to advise him that all relevant conduct would be considered in determining his base offense level under the Sentencing Guidelines. Doc. 3 at 2. He contends that due to counsel's deficient performance in this regard,

and his [Sharer's] possible impairment due to medication side effects at the rearraignment hearing, his guilty plea was involuntary. Doc. 3 at 14.

As to his related second ground, Sharer avers that after learning his guideline exposure was not limited to the stipulated facts, he requested that counsel move to withdraw his guilty plea, but that counsel instead "delayed, cajoled, and ultimately frustrated [his] efforts." Doc. 3 at 3. Sharer alleges that counsel misadvised that Sharer could not seek to withdraw his guilty plea and avers that if a timely motion had been pursued, the "*Carr* factors" would have been satisfied and he would have been permitted to withdraw his guilty plea. Doc. 3 at 14-18

In his affidavit, which largely mirrors his claims, Sharer declares, *inter alia*, that had he known that his drug quantity was not limited to that stipulated in the Factual Resume and that the resulting guideline imprisonment range could be more than 37-to-46 months, he **"**would not have pled guilty and would have exercised [his] right to trial by jury." Doc. 4 at 7. Sharer also claims to lack **"**any recollection of pleading guilty," although he recalls "being in court and having Mr. Carroll tell [him] how to answer—yes or no—to questions posed by a judge." Doc. 4 at 7. He also avers that counsel "repeatedly cajoled [him] into delaying the motion to withdraw [his] plea." Doc. 4 at 8. As support for his contention that he was frustrated that counsel thwarted his efforts to withdraw his guilty plea, he references attached email exchanges purportedly between his mother and counsel. Doc. 4 at 9. Sharer also contend that his "mental impairment and the medications [he] was taking made it possible for Mr. Carroll to overbear [his] will and control [his] decisions. Doc. 4 at 10.

In her affidavit, Sharer's mother attests that just prior to the start of the rearraignment hearing, counsel talked to Sharer for about 30 seconds, telling "him how to plead" and that the "rearraignment hearing was just a formality." Doc. 4 at 16-18. She avers further that beginning

shortly after the hearing, Sharer wanted to withdraw his guilty plea, which he conveyed many times to counsel, but that counsel said it was too late to do so, and that it would "work out." Doc. 4 at 16. According to Sharer's mother, he "suffered many seizures and was heavily medicated throughout the course of the prosecution . . . [and] exhibited a lack of short or intermediate term memory. At some points he was so heavily medicated that he seemed to struggle to simply remain conscious." Doc. 4 at 16-17. Like Sharer, she references an attachment purporting to be an email exchange between herself and defense counsel, during which counsel stated, "I'd appreciate knowing from you whether you think he's capable of making a rational decision right now, given what we've seen and heard from him and the medication he's on." Doc. 4 at 17 (citing Doc. 4 at 14-19).

### B. Voluntariness of Guilty Plea

In this case, the record establishes that Sharer's guilty plea was knowing and voluntary. During the Rule 11 hearing, Sharer confirmed under oath that: (1) no one had coerced or threatened him in any way to enter his guilty plea; (2) no one had made any promises to cause him to enter into the plea agreement, and (3) he was pleading guilty freely and voluntarily because he was guilty. Crim. Doc. 2539 at 12-13. He also assured the Court that no one had made any predictions or promises about the sentence. Crim. Doc. 2539 at 7-9. Sharer likewise affirmed that while he had discussed the sentencing guidelines with his counsel, he understood that: (1) the Court was solely responsible for determining appropriate sentence after considering the Presentence Report (PSR) and consulting the Sentencing Guidelines; (2) the Court was not bound by the stipulated facts and could disregard them or consider facts not mentioned in the stipulations; (3) by pleading guilty to Count 19 of the superseding indictment he was subject to up to 20 years imprisonment, and (4) he would be bound by his guilty plea even if the sentence

received was higher than expected. Crim. Doc. 2539 at 8-9, 12. Sharer also averred that he was fully satisfied with his counsel's advice, indeed, he volunteered that he was "100 percent" satisfied." Crim. Doc. 2539 at 12.

Moreover, contrary to his assertions, neither the plea agreement nor factual resume limit the relevant drug quantity. Crim. Doc. 359; Crim. Doc. 360. While Sharer stipulated in the Factual Resume that he possessed with intent to distribute "approximately six grams of methamphetamine," he also stipulated that the factual resume was "not intended to be a complete accounting of all the facts and events related to the offense charged in this case" but was to establish the factual basis for Sharer's guilty plea to Count 19. Crim. Doc. 360 at 2. Again, Sharer acknowledged at rearraignment that the Court could disregard facts agreed to by the parties and consider other facts not agreed to, and that, in that event, he might not be able to withdraw his plea. Crim. Doc. 2539 at 8-9. Sharer offers no reliable evidence to rebut the record recounted above or the Court's findings that he was "competent and capable of entering an informed plea" and that his guilty plea was "knowing and voluntary." Crim. Doc. 2539 at 16. His belated, self-serving assertions are insufficient to do so. Likewise, even if his mother' account is to be believed, she concedes meeting counsel only at rearraignment and offers no independent evidence of counsel's supposed promise or advice that the guideline sentencing range would be calculated only on the 6-gram drug quantity in the stipulated facts and would result in a guideline imprisonment range of only 37-to-46 months. Doc. 4 at 16. Consequently, the affidavit of Sharer's mother is also insufficient to overcome Sharer's sworn averments and conduct at the rearraignment hearing, as she obviously was not privy to the conversations between Sharer and counsel on which Sharer's claim of an involuntary guilty plea rests. *See Cervantes*, 132 F.3d at 1110 (requiring movant to produce "independent indicia of the likely

merit of [his] allegations" to overcome re-arraignment testimony and plea agreement, which refuted his allegations); *United States v. Merrill*, 340 F. App'x 976, 978 (5th Cir. 2009) (per curiam) (movant's self-serving and conclusory allegations insufficient since movant did not present affidavits from reliable third parties establishing the terms of the alleged promise, the time and place of the promise, or the identity of any eyewitnesses to the promise).

The record of the rearraignment hearing also contradicts Sharer's suggestions that his answers were coached and that he did not understand the guilty plea proceedings due to mental impairment and side-effects of his seizure medications. At rearraignment, Sharer affirmed under oath that he was of sound mind and understood the proceedings despite the medications. Crim. Doc. 2539 at 4. His counsel also confirmed that Sharer was competent to enter a guilty plea and that the seizure medications did not affect his competency or his ability to enter a knowing and voluntary plea. Crim. Doc. 2539 at 4.

Again, Sharer has presented no independent evidence that he suffered from any mental impairment that rendered him unable to consult with his lawyer or to understand the nature of the proceedings. As such, he has failed to establish that he was not competent to enter a guilty plea. *See Merrill*, 340 F. App'x at 978 (citing *Drope v. Missouri,* 420 U.S. 162, 172 (1975)) (rejecting claim that defendant was mentally incompetent to enter guilty plea based on his coherent and responsive testimony at rearraignment and the fact that he had conferred with counsel about the charges, plea agreement, and factual resume). Sharer's mother's statement that he "suffered many seizures and was heavily medicated throughout the course of the prosecution" is insufficient in light of Sharer's sworn averments to the contrary.

Indeed, before sentencing, on counsel's unopposed motion based on "significant inconsistencies in [his] communications," Sharer underwent court-ordered competency

evaluation.  Crim. Doc. 856 at 2; Crim. Doc. 875.  The examining forensic psychologist determined that despite a neurocognitive disorder resulting from a previous traumatic brain injury, Sharer was "fully competent to understand the nature and consequences of the court proceedings against him, and to properly assist counsel in his defense."  Crim. Doc. 1201 at 25.  At the subsequent competency hearing, the district judge asked Sharer, "[i]s there anything at all about what we're doing here today or about the report or anything that's been said by counsel that you have taken any issue with or that you want clarified or want to talk about?"  Crim. Doc. 2694 at 7.  Sharer responded, "No, ma'am."  Id.  Subsequently, the Court found Sharer competent.  Crim. Doc. 2694 at 5-7.

Particularly as to the voluntariness of Sharer's guilty plea and the motivation of his claims is the discussion that ensued the Court's competency finding:

> THE COURT:  Please make sure we are clear, though. There was a guilty plea entered on January the 23rd of 2015.  On that, are we still -- Mr. Carroll, do you and your client still plan to proceed forward then now with the sentencing?
>
> MR. CARROLL: That's my current understanding.
>
> THE COURT: Okay. All right. Mr. Sharer -- well, I will just let you and your client talk about that.  Right now we will set it for a sentencing hearing.  If anything from your discussions with him cause us to reevaluate in any way the guilty plea, then we will do so.  Otherwise, I will just assume that you have talked to him and you-all are prepared to go ahead for sentencing. (Discussion with the attorney and the client off the record.)
>
> MR. CARROLL: Your Honor, this is a situation, I think, that arises in a lot of federal cases where people have never been in the federal system[,] but they have been in the state system.
> Mr. Sharer signed a factual resume, and he's stands by that.  He's ready to go to sentencing on that.  He -- you know, we haven't seen the presentence report.
>
> THE COURT: Right.
>
> MR. CARROLL: So we don't know what's included in that in terms of whether there's anything that -- one of the things that gave me some pause was the extent to which Mr. Sharer retained the ability to deal with the idea that even though he

> signed a factual resume which dealt with a certain quantity of drugs, there is this possibility -- which we would disagree with – that he ought to be charged with or made responsible for some additional quantum of drugs in the presentence report. But of course if the presentence report doesn't take that position, then it doesn't matter.
>
> THE COURT: Understood. And that's come up in numerous of the cases in this particular case, numerous of the defendants. So it's something that right now we will just see what the PSR says and then you-all take the position that you take, whether you agree or disagree with it, and we will make sure that it's hashed out at sentencing.
>
> MR. CARROLL: And I want to make sure that the Court is clear, too. Can I tell you that if it comes out a different way than the way Mr. Sharer put in his factual resume that he might take an issue with voluntariness. He might.
>
> THE COURT: I think he has an absolute right to take an issue with whatever he thinks is appropriate. And then, whether or not I agree with it is another matter. But no, I am not holding you to that, under the circumstances. We will set it for sentencing, see where you stand, and then we will go and take care of whatever problems he has and resolve those one way or the other.
>
> MR. CARROLL: Agreed. Thank you.

Crim. Doc. 2694 at 7-9. Clearly, as evinced by the responses of counsel after conferring with Sharer, his is a typical case of "buyer's remorse" resulting from the possibility of receiving a sentence significantly higher than he hoped, rather than any mental impairment or counsel's ineffective assistance.

Similarly at sentencing, Sharer: (1) voiced no objection or concerns about his guilty plea, counsel's supposed promise of a lower sentence, or his mental state, (2) affirmed the validity of his guilty plea, (3) praised his medicine for keeping him "straight," and (4) apologized for wasting the court's time. Crim. Doc. 2695 at 80-81. Called to testify at the sentencing hearing, Sharer's mother also said nothing that would call into question counsel's representation or the voluntariness of Sharer's guilty plea, offering instead only ostensibly mitigating testimony about Sharer's remarkable improvement while in custody. Crim. Doc. 2695 at 78-79.

In assessing the sentence, the Court began by praising defense counsel for his extensive work, noting, "I don't know that you could have had a more thorough, effective defense in this case than what you have had." Crim. Doc. 2695 at 87. Through the plea bargain, counsel limited Sharer's sentencing exposure by securing dismissal of the conspiracy charge that would have subjected him to a statutory range of 10 years-to-life in prison. Counsel also successfully objected to the firearm enhancement and report of gang affiliation in the PSR, Crim. Doc. 2695 at 12, 66, and secured a substantial guideline reduction, Crim. Doc. 2695 at 92. This was all despite the fact that the Court found that Sharer was not credible, specifically that he was not "telling the truth" in contending that he was "so incapacitated" by mental-health and drug-abuse issues that he just "stumbled" into the conspiracy and was not "really a drug dealer." Crim. Doc. 2695 at 91.

For the foregoing reasons, the Court concludes that Sharer has failed to establish that his guilty plea was not knowing and voluntary or that counsel was ineffective for allegedly misadvising him. Thus, his first claim fails.

### C. Failure to Move to Withdraw Guilty Plea

Sharer's contention that counsel was ineffective for failing to move to withdraw his guilty plea likewise fails. Sharer has not shown that such a motion likely would have been granted. A district court must consider the following seven factors when a criminal defendant who has pled guilty seeks to withdraw his plea: (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the Government; (3) whether the defendant has delayed in filing his withdrawal motion; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available; (6) whether the

original plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources. *United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984).

While Sharer disputes being responsible for anything beyond the six-gram quantity of methamphetamine stipulated in the factual resume, he has not asserted, much less established his innocence, the involuntariness of his plea, or the ineffective assistance of counsel at all stages. In addition, his motion would have wasted judicial resources, as he evidently would not have filed it until shortly before sentencing. Doc. 4 at 10. Likewise, because Sharer does not complain of an actual conflict of interest arising from the joint representation of co-defendants, a *Garcia*[1] hearing was not required. Doc. 3 at 3, 16; *United States v. Casiano*, 929 F.2d 1046, 1052 (5th Cir. 1991).

Moreover, Sharer's assertion of any conflict stemming from counsel's alleged failure to move for plea withdrawal is conclusory. Sharer surmises that counsel did not move for plea withdrawal simply because he would have been forced to disclose his misadvice—namely that he had admonished Sharer that he could not withdraw his guilty plea. Doc. 3 at 21. Sharer argues that counsel should have suggested instead that he "consult with another attorney, as [counsel] might have a conflict in pursuing the withdrawal of my plea based on his own ineffective assistance." Doc. 4 at 10. However, Sharer's conflict of interest claim is completely unsupported and conclusory. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (conclusory assertions on a critical issue are insufficient to support a constitutional claim). Further, because Sharer has not shown that a motion for plea withdrawal presumably would have

---

[1] *United States v. Garcia,* 517 F.2d 272 (5th Cir. 1975), *abrogated on other grounds*, *Flanagan v. United States*, 465 U.S. 259 (1984).

been granted, for the reasons previously stated, he cannot show prejudice as a result of counsel alleged deficient performance. Thus, this ineffective assistance claim also fails.

### III.    EVIDENTIARY HEARING

In his reply, Sharer contends for the first time that he is entitled to an evidentiary hearing. Doc. 10 at 1-9. However, "[w]hen the files and records of a case make manifest the lack of merit of a Section 2255 [motion], the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981); *see also United States v. Reed*, 719 F.3d 369, 373-74 (5th Cir. 2013) ("A defendant is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008))).

Here, Sharer argues that he is entitled to an evidentiary hearing because his assertions are supported by his mother's declarations and the record evidence does not disprove his allegations that counsel provided erroneous advice prior to rearraignment and refused to pursue a motion to withdraw afterwards. Doc. 10 at 6-7. However, because Sharer's claims lack merit for the reasons stated above, which are wholly supported by the record, no evidentiary hearing is required.

## IV. CONCLUSION

The Section 2255 motion should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on November 5, 2019.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).